IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE MEADOR AKINS, AS THE ADMINISTRATOR OF THE ESTATE OF THAD
STILL AKINS, DECEASED;

DEBRA P. HACKETT, CLK **DEMAND FOR JURY TRIAL**
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**Plaintiff,**

v.                                                    Civil Action No.: 2:18-cv-85

**ROOSEVELT BUSH III, an Individual; A&S SERVICES GROUP LLC d/b/a A&S
KINARD - A CELADON COMPANY, a foreign Corporation; QUALITY COMPANIES
LLC, a foreign Corporation; QUALITY EQUIPMENT LEASING LLC, a foreign
Corporation; CELADON TRUCKING SERVICES INC, a foreign Corporation;**

**Defendants.**

## COMPLAINT FOR DAMAGES
## JURISDICTION AND VENUE

1.  Plaintiff, **GEORGE MEADOR AKINS** is an adult resident citizen of Lowndes County,
    Alabama, and has been duly appointed as the Administrator of the Estate of Thad Still Akins,
    Deceased, by the Baldwin County Probate Court in Case Number 34264.

2.  Defendant, **ROOSEVELT BUSH III** ("Bush") is an adult resident citizen of Richmond
    County, Georgia. Bush was the driver of the Commercial Motor Vehicle ("Truck-Tractor" and
    "Trailer") that was involved in the incident made the basis of this Complaint ("Wreck"). Bush
    was the owner of the Trailer involved in the Wreck. Bush's service address is 4090 Old
    Waynesboro Road, Augusta, Georgia 30906.

3.  Defendant, **A&S SERVICES GROUP LLC d/b/a A&S KINARD - A CELADON
    COMPANY** (hereinafter "A&S"), is a Delaware corporation with its principle place of
    business in the State of Pennsylvania. A&S is a Motor Carrier with interstate operating
    authority from the Federal Motor Carrier Safety Administration ("FMCSA"). The Truck-
    Tractor involved in the Wreck was being operated by A&S displaying its US DOT Number
    1880751 and Motor Carrier Number MC-164166. The Trailer involved in the Wreck contained
    cargo that A&S was being paid to transport. A&S's service address is: Gerald D. Colvin, 1910
    1st Avenue North, Birmingham, Alabama 35203.

4.  Defendant, **QUALITY COMPANIES LLC,** ("Quality Companies"), is a Delaware
    corporation with its principle place of business in the State of Indiana. Quality Companies

owned the Truck-Tractor involved in the Wreck. Quality Companies entrusted its Truck-Tractor to Bush. Quality Companies leased its Truck-Tractor to A&S. Quality Companies' service address is Kenneth L. Core, 9503 East 33rd Street, Indianapolis, Indiana 46235.

5. Defendant, **QUALITY EQUIPMENT LEASING LLC,** ("Quality Leasing"), is a Delaware corporation with its principle place of business in the State of Indiana. Quality Leasing owned the Truck-Tractor involved in the Wreck. Quality Leasing entrusted its Truck-Tractor to Bush. Quality Leasing leased its Truck-Tractor to A&S. Quality Leasing's service address is Kenneth L. Core, 9503 East 33rd Street, Indianapolis, Indiana 46235.

6. Defendant, **CELADON TRUCKING SERVICES INC** (hereinafter "Celadon"), is a New Jersey corporation with its principle place of business in the State of Indiana. Quality Companies, Quality Leasing and A&S are wholly owned and operated by Celadon. Celadon's service address is Kenneth L. Core, 9503 East 33rd Street, Indianapolis, Indiana 46235.

7. The amount in controversy, exclusive of interest and cost, exceeds seventy-five thousand dollars **($75,000).**

8. This court has jurisdiction pursuant to 28 U.S.C. § 1332 and venue is proper in the Middle District of Alabama, Northern Division.

## FACTUAL ALLEGATIONS

9. Thad Still Akins received serious personal injuries in the Wreck causing his death.

10. The Wreck happened on January 19, 2017.

11. The Wreck happened on Interstate 65 North in Lowndes County.

12. The Wreck happened at approximately 9:30 pm.

13. The Wreck happened in a rain storm.

14. There are no lights illuminating Interstate 65 North approaching the Wreck location.

15. Quality Companies and Quality Leasing owned the Truck-Tractor driven by Bush in the Wreck.

16. Bush was the owner of the Trailer involved in the Wreck.

17. The Truck-Tractor and Trailer were completely stopped on Interstate 65 North at the time of the Wreck.

18. The Trailer was blocking the left lane of Interstate 65 North at the time of the Wreck.

19. The Truck-Tractor was blocking the right lane of Interstate 65 North at the time of the Wreck.

20. At the time of the Wreck, the Truck-Tractor and Trailer were stopped in violation of *Ala. Code* § 32-5A-137.

21. Prior to the Wreck, other motorist had to use the emergency lane and/or soft shoulder to drive around the Truck-Tractor and Trailer.

2

22. Prior to the Wreck, Thad Still Akins was driving a vehicle to the rear of and approaching Truck-Tractor and Trailer.

23. Prior to the Wreck, the rain storm intensified in the Wreck location.

24. Prior to the Wreck, the vehicle driven Thad Still Akins was traveling at a slow rate of speed.

25. The vehicle driven by Thad Still Akins collided with the Trailer in the left lane of Interstate 65 North.

26. At the time of the Wreck, Bush was the owner of Bush Transportation.

27. Quality Companies and Quality Leasing engage in the business of entering into lease-purchase agreements of Truck-Tractors they own with Professional Truck Drivers.

28. After entering the lease-purchase agreements, Quality Companies and Quality Leasing leases their Truck-Tractor to Motor Carriers.

29. After entering the lease-purchase agreements, Quality Companies and Quality Leasing obtains employment for the Professional Truck Driver with the Motor Carrier leasing the Truck-Tractor.

30. Prior to and at the time of the Wreck, Quality Companies and Quality Leasing entered a leased–purchase agreement of the Truck-Tractor with Bush.

31. Prior to and at the time of the Wreck, Quality Companies and Quality Leasing entered a leased–purchase agreement of the Truck-Tractor with Bush Transportation.

32. Prior to and at the time of the Wreck, Quality Companies and Quality Leasing allowed its Truck-Tractor to be driven by Bush.

33. Prior to and at the time of the Wreck, Quality Companies and Quality Leasing leased its Truck-Tractor to A&S.

34. Prior to and at the time of the Wreck, Quality Companies and Quality Leasing participated in getting Bush hired by A&S.

35. At the time of the Wreck, the Trailer was loaded with freight ("Cargo").

36. Prior to the Wreck, A&S contracted to transport the Cargo.

37. A&S dispatched Bush to transport the Cargo.

38. Bush was dispatched to transport the Cargo by an employee of A&S.

39. Bush was dispatched to transport the Cargo by an agent of A&S.

40. The Truck-Tractor displayed A&S's business name at the time of the Wreck.

41. The Truck-Tractor displayed A&S's US DOT Number 1880751 at the time of the Wreck.

42. The Truck-Tractor displayed A&S's Motor Carrier Number MC-164166 (FMCSA Authority) at the time of the Wreck.

43. After the Wreck with knowledge that Plaintiff was making a claim that would likely result in litigation, Bush undertook by employee, agent or instruction to a third-party to remove A&S's business name, US DOT Number and Motor Carrier Number from the Truck-Tractor driven by him at the time of the Wreck.

44. After the Wreck with knowledge that Plaintiff was making a claim that would likely result in litigation, A&S undertook by employee, agent or instruction to a third-party to remove its

business name, US DOT Number and Motor Carrier Number from the Truck-Tractor driven by Bush at the time of the Wreck.

45. After the Wreck with knowledge that Plaintiff was making a claim that would likely result in litigation, Quality Companies undertook by employee, agent or instruction to a third-party to remove A&S's business name, US DOT Number and Motor Carrier Number from the Truck-Tractor driven by Bush at the time of the Wreck.

46. After the Wreck with knowledge that Plaintiff was making a claim that would likely result in litigation, Quality Leasing undertook by employee, agent or instruction to a third-party to remove A&S's business name, US DOT Number and Motor Carrier Number from the Truck-Tractor driven by Bush at the time of the Wreck.

47. After the Wreck with knowledge that Plaintiff was making a claim that would likely result in litigation, Celadon undertook by employee, agent or instruction to a third-party to remove A&S's business name, US DOT Number and Motor Carrier Number from the Truck-Tractor driven by Bush at the time of the Wreck.

48. The Cargo was being transported under A&S FMCSA Authority at the time of the Wreck.

49. Bush was driving under A&S's FMCSA Authority at the time of the Wreck.

50. Prior to the Wreck, Bush had a Commercial Driver's License (CDL) issued by the State of Georgia.

51. Bush's CDL Number was 049159537 at the time of the Wreck.

52. Bush's residence address on his CDL was 4090 Old Waynesboro Road, Augusta, Georgia 30906 at the time of the Wreck.

53. Bush Transportation's address listed with the FMCSA was 4090 Old Waynesboro Road, Augusta, Georgia 30906 at the time of the Wreck.

54. At the time of the Wreck, Bush's CDL was a Class "A" license, which authorized him to drive any combination of vehicles with a gross vehicle weight rating (GVWR) of twenty-six thousand one (26,001) pounds or more in interstate commerce.

55. At the time of the wreck, the Cargo in the Trailer was Diesel Fuel Additive.

56. The Cargo in the Trailer at the time of the Wreck was a Hazardous Material, as defined by Federal Motor Carrier Safety Regulation ("FMCSR") §390.5 and §390.5T.

57. The Cargo in the Trailer at the time of the Wreck was a Hazardous Substance, as defined by FMCSR §390.5 and §390.5T.

58. Prior to the Wreck, Bush never received any Hazardous Material training from A&S, as required by FMCSR §177.816.

59. At the time of the Wreck, Bush did not have a Hazardous Material Endorsement (Class H) for his CDL.

60. Prior to the Wreck, Bush had never applied for a Class H endorsement.

61. Prior to the Wreck, Defendant Bush had never taken the Hazardous Materials Endorsement Knowledge Test given by the State of Georgia.

62. Prior to the Wreck, Defendant Bush had never passed the Hazardous Materials Endorsement Knowledge Test in any state.

4

63. Prior to the Wreck, Defendant Bush had never passed a Transportation Security Administration (TSA) criminal background check required to obtain a Class H endorsement.

64. At the time of the Wreck, the Truck-Tractor did not have any Hazardous Materials signage ("Placard"), as required by FMCSR § 172.504.

65. At the time of the Wreck, the Trailer did not have any Hazardous Materials Placards, as required by FMCSR § 172.504.

66. Prior to the Wreck, the Trailer was immobile and inoperable due to a fused hub in one of its two axles.

67. The fused hub was caused by fire in a Trailer drum.

68. The fire was substantial enough to burn the tires off of the Trailer drum.

69. The fire was caused by a hub oil leak in the Trailer hub.

70. The hub oil leaked from the hub in an amount that resulted in the lack of sufficient lubrication for the Trailer hub internal, metal bearings.

71. The lack of sufficient lubrication caused excessive friction in the Trailer hub.

72. The excessive friction caused heat in the Trailer hub.

73. The excessive friction and heat ignited the remaining hub oil in the Trailer hub.

74. The fire fused the internal, metal bearings.

75. The fused internal, metal bearings caused the wheels on the Trailer axle to lock and stop rotating.

76. The locked wheels caused the Trailer to become immobile and inoperable.

77. Bush was aware of the Trailer hub fire prior to the Wreck.

78. Bush chose to remain on the roadway at a very slow speed after losing the Trailer tires.

79. Bush chose to remain on the roadway at a very slow speed after knowing about the fire.

80. Bush was trying to make it to the truck stop at the next exit, five miles up Interstate 65 North.

81. Bush's wife was a passenger in the Truck-Tractor at the time of the wreck.

82. Bush's wife was aware of the Trailer hub fire prior to the wreck.

83. Bush's wife was an unauthorized passenger in the Truck-Tractor, pursuant to FMCSR §392.60.

84. Prior to the wreck, Bush never obtained written authorization from A&S to transport his wife, as required by FMCSR §392.60.

85. Bush did not tell the Alabama State Troopers about the fire.

86. Bush did not tell the Alabama State Troopers about the Truck-Tractor and Trailer being stopped in the roadway at the time of the Wreck.

87. Bush's wife did not tell the Alabama State Troopers about the fire.

88. Bush's wife did not tell the Alabama State Troopers about the Truck-Tractor and Trailer being stopped in the roadway at the time of the Wreck.

89. The Trailer was being used in violation of FMCSR §396.17 because it had not received its Annual Safety Inspection.

90. In the 12 months prior to the Wreck, the Trailer had not had a Safety Inspection, as required by FMCSR §396.17(c).

91. The Trailer did not have on it, as required by FMCSR §396.17(c), a written Safety Inspection Report prepared in accordance with FMCSR §396.21(a) at the time of the Wreck.

92. The document box on front of the Trailer used to house Safety Inspection Reports was empty at the time of the Wreck.

93. The Trailer did not have on it any Safety Inspection Stickers/Decals meeting the requirements of FMCSR §396.17(c)(2).

94. The Trailer had a Safety Inspection Sticker/Decal dated July of 2015 on it at the time of the Wreck.

95. The Safety Inspection Sticker/Decal dated July of 2015 was out of date and not valid at the time of the Wreck.

96. The information on the Safety Inspection Sticker/Decal dated July of 2015 is false.

97. The Trailer did get a Safety Inspection, as required by FMCSR §396.17(c), in July of 2015.

98. There was never a Safety Inspection Report prepared in July of 2015.

99. The Safety Inspection Sticker/Decal dated July of 2015 is missing vital, required information.

100. The Safety Inspection Sticker/Decal dated July of 2015 does not provide the Annual Inspection Report Number.

101. The Safety Inspection Sticker/Decal dated July of 2015 does not provide the Motor Carrier Identification Number.

102. The Safety Inspection Sticker/Decal dated July of 2015 does not provide information uniquely identifying the vehicle inspected, as required by FMCSR §396.17(c)(2)(iii).

103. The Trailer had a second Safety Inspection Sticker/Decal that is not dated.

104. The second Safety Inspection Sticker/Decal was out of date and not valid at the time of the Wreck.

105. The second Safety Inspection Sticker/Decal contains even less of the required information than the July of 2015 Sticker/Decal.

106. In the 24 months prior to the Wreck, the Trailer had not had a Safety Inspection required by FMCSR §396.17(c).

107. A proper pre-trip inspection of the Trailer, in accordance with FMCSR § 392.7, would have disclosed the hub seal leak on the day of the Wreck.

108. Bush did not conduct a pre-trip inspection of the Commercial Motor Vehicle, as required by FMCSR § 392.7.

109. The Trailer had not received the repair and maintenance required by FMCSR § 396.3 prior to the Wreck.

110. Prior to the Wreck on January 19, 2017, the Trailer parts and accessories were not in safe and proper operating condition, as required by FMCSR § 396.3.

111. Prior to the Wreck on January 19, 2017, the Trailer was being operated in such a condition as to likely cause an accident or a breakdown contrary to the prohibition of FMCSR§ 396.7.

112. Bush was aware of a mechanical defect causing the fire in time to have removed the Truck-Tractor and Trailer from the roadway prior to the Trailer becoming immobile and inoperable.

6

113.   At the time of the Wreck, the Trailer lamps were inoperable contrary to the requirements of FMCSR §393.9

114.   At the time of the Wreck, the Trailer did not have lamps and reflex reflectors required FMCSR §393.11.

115.   At the time of the Wreck, the Trailer did not have retroreflective sheeting or tape meeting the requirements of FMCSR §393.11 and §393.13.

116.   Prior to the Wreck on January 19, 2017, Bush did not activate the Truck-Tractor's and Trailer's hazard warning signal flashers.

117.   Prior to the Wreck on January 19, 2017, Bush did not place the warning devices, required by FMCSR §393.95, pursuant to the mandate of FMCSR §392.22.

118.   Prior to the Wreck on January 19, 2017, Bush did not place the warning devices, required by *Ala. Code* § 32-5-220 and § 32-5-221.

119.   Prior to this wreck, Quality Companies and Quality Leasing leased the Truck-Tractor to RWI Transportation, LLC.

120.   Prior to this wreck, Quality Companies and Quality Leasing obtained employment for Bush with RWI Transportation, LLC.

121.   RWI Transportation, LLC terminated the Truck-Tractor lease on November 2, 2016.

122.   RWI Transportation, LLC terminated the employment of Bush on November 2, 2016.

123.   Bush Transportation's operating Authority was revoked by the FMCSA at the time of the Wreck.

124.   Bush Transportation's Operating Authority was revoked by the FMCSA on August 12, 2013.

125.   Bush Transportation's Operating Authority was revoked by the FMCSA on August 24, 2015.

126.   Bush Transportation's Operating Authority was revoked by the FMCSA on November 24, 2015.

127.   Bush Transportation's Operating Authority was never reinstated after November 24, 2015.

128.   Between November 24, 2015 and the date of the wreck, Bush Transportation continued to conduct operations in violation of the revocation of its Operating Authority.

129.   Bush Transportation was under an Out of Service Order, pursuant to FMCSR §386.73(a), prohibiting it from conducting operations at the time of the Wreck.

130.   Bush Transportation was placed Out of Service by the FMCSA prohibiting it from conducting operations on February 16, 2016.

131.   The Out of Service Order was never removed after February 16, 2016.

132.   Between February 16, 2016 and the date of the wreck, Bush Transportation continued to conduct operations in violation of the Out of Service Order.

133.   On September 1, 2016, Bush received an Out of Service Order by the State of Georgia when it was determined that he was "Operating without Required Operating Authority."

134. Between September 1, 2016 and the date of the wreck, Bush Transportation continued to conduct operations in violation of the Out of Service Order

135. On the day of the Wreck, the FMCSA's Safer Website, Company Snapshot for Bush Transportation, stated in large, bold, red letters: "Out of Service."

136. On the day of the Wreck, the FMCSA's CSA 2010 SMS Website, Company Profile for Bush Transportation, stated in red letters: "SMS Company Profile U.S. DOT# 2355867 is currently under an Out-of-Service order from FMCSA and shall not operate."

137. On the day that Bush began to drive for A&S, the FMCSA's Safer Website, Company Snapshot for Bush Transportation, stated in large, bold, red letters: "Out of Service."

138. On the day that Bush began to drive for A&S, the FMCSA's CSA 2010 SMS Website, Company Profile for Bush Transportation, stated in red letters: "SMS Company Profile U.S. DOT# 2355867 is currently under an Out-of-Service order from FMCSA and shall not operate."

139. A&S uses the FMCSA's Safer Website in conducting its operations as a Motor Carrier.

140. A&S uses the FMCSA's CSA 2010 SMS Website in conducting its operations as a Motor Carrier.

141. Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the November 24, 2015 Operating Authority Revocation when it entered into the lease-purchase agreement with Bush for its Truck-Tractor.

142. Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the November 24, 2015 Operating Authority Revocation when it leased Truck-Tractor to RWI Transportation, LLC.

143. Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the November 24, 2015 Operating Authority Revocation when it obtained employment for Bush with RWI Transportation, LLC.

144. Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the November 24, 2015 Operating Authority Revocation when RWI Transportation, LLC terminated the lease of the Truck-Tractor on November 2, 2016.

145. Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the November 24, 2015 Operating Authority Revocation when RWI Transportation, LLC terminated Bush's employment on November 2, 2016.

146. Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the November 24, 2015 Operating Authority Revocation when it leased Truck-Tractor to A&S.

147. Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the November 24, 2015 Operating Authority Revocation when it obtained employment for Bush with A&S.

148. Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the February 16, 2016 Out of Service Order when it entered into the lease-purchase agreement with Bush for its Truck-Tractor.

149.    Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the February 16, 2016 Out of Service Order when it leased Truck-Tractor to RWI Transportation, LLC.

150.    Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the February 16, 2016 Out of Service Order when it obtained employment for Bush with RWI Transportation, LLC.

151.    Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the February 16, 2016 Out of Service Order when RWI Transportation, LLC terminated the lease of the Truck-Tractor on November 2, 2016.

152.    Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the February 16, 2016 Out of Service Order when RWI Transportation, LLC terminated Bush's employment on November 2, 2016.

153.    Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the February 16, 2016 Out of Service Order when it leased Truck-Tractor to A&S.

154.    Quality Companies and Quality Leasing knew that Bush continued to operate in violation of the February 16, 2016 Out of Service Order when it obtained employment for Bush with A&S.

## LEGAL ALLEGATIONS
## COUNT ONE – NEGLIGENCE BUSH

155.    Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein and further avers as follows:

156.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush owed to the public the duty to use ordinary care in his use of the Truck-Tractor and Trailer.

157.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush was required not needlessly endanger the public in his use of the Truck-Tractor and Trailer.

158.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush failed to exercise ordinary care in his actions leading up to the Wreck.

159.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush needlessly endangered the public in his actions leading up to the Wreck.

160.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush did not meet his duties/responsibilities to the public when he:

   a. failed to operate a Commercial Motor Vehicle as a reasonable and prudent professional truck driver would have exercised under the same or similar circumstances.

   b. failed to follow safety rules, practices and principles of professional truck drivers ("Truck Driver Safety Rules") with commercial driver's licenses.

   c. failed to follow safety rules, practices and principles of the trucking industry

9

("Trucking Safety Rules").

d. failed to use the knowledge and skills necessary to operate a Commercial Motor Vehicle safely.

e. failed to use the knowledge and skills necessary inspect a Commercial Motor Vehicle.

f. failed to inspect a Commercial Motor Vehicle in violation of the FMCSR, Alabama Law and Georgia Law.

g. failed to repair known mechanical problems on a Commercial Motor Vehicle in violation of the FMCSR, Alabama Law and Georgia Law.

h. failed to engage in preventative maintenance of a Commercial Motor Vehicle in violation of the FMCSR, Alabama Law and Georgia Law.

i. operated a Commercial Motor Vehicle in a mechanically unsafe working condition in violation of the FMCSR and Alabama Law.

j. operated a Commercial Motor Vehicle in a condition likely to cause an accident or a breakdown.

k. operated a Commercial Motor Vehicle in violation of an Out of Service Order in violation of the FMCSR and Alabama Law.

l. operated a Commercial Motor Vehicle without proper lights in violation of the FMCSR and Alabama Law.

m. operated a Commercial Motor Vehicle without proper reflectors in violation of the FMCSR and Alabama Law.

n. operated a Commercial Motor Vehicle without proper retroreflective sheeting or tape in violation of the FMCSR and Alabama Law.

o. failed to discover mechanical defects on a Commercial Motor Vehicle prior to the trip leading to the Wreck.

p. failed to discover mechanical defects on a Commercial Motor Vehicle during the trip leading to the Wreck.

q. failed to heed warnings of the impending breakdown of a Commercial Motor Vehicle during the trip leading to the Wreck.

r. continued to operate a Commercial Motor Vehicle in a mechanically unsafe working condition after the discovery of mechanical defects in violation of the FMCSR and Alabama Law.

s. failed to use available exits to completely remove a Commercial Motor Vehicle from Interstate 65 North prior to its breakdown.

t. failed to use available emergency stopping lanes and the roadway shoulders completely remove a Commercial Motor Vehicle from Interstate 65 North prior to its breakdown.

u. failed to move a Commercial Motor Vehicle farther from the main-travel portion of Interstate 65 North prior to its breakdown.

v. failed to move a Commercial Motor Vehicle completely within just one lane of the main-travel portion of Interstate 65 North prior to its breakdown.

w. parked and/or stopped a Commercial Motor Vehicle on the main-travel portion of Interstate 65 North in violation of the FMCSR and Alabama Law.

x. failed to remove a Commercial Motor Vehicle from the main-travel portion of Interstate 65 North after its breakdown.

y. failed to obtain assistance to remove a Commercial Motor Vehicle from the main-travel portion of Interstate 65 North after its breakdown.

z. failed to properly warn approaching motorist of the Commercial Motor Vehicle stopped in the main-travel portion of Interstate 65 North in violation of the FMCSR and Alabama Law.

aa. failed to obtain assistance in warning approaching motorist of the Commercial Motor Vehicle stopped in the main-travel portion of Interstate 65 North.

bb. impeded the normal and reasonable movement of traffic on Interstate 65 North in violation of Alabama Law.

cc. violated the Federal Motor Carrier Safety Regulations.

dd. violated Alabama motor vehicle statutes.

ee. violated company policy.

ff. aided and abetted other Defendants in the violation of the Federal Motor Carrier Safety Regulations, Alabama Law, Delaware Law, Georgia Law, Indiana Law and/or New Jersey Law.

gg. caused and/or contributed to the Wreck.

hh. committed other such acts and omissions as will be shown through discovery and proven at the trial of this action.

161. On January 19, 2017, Bush was operating a Commercial Motor Vehicle in interstate commerce.

162. On January 19, 2017, Bush was required to comply with the FMCSR.

163. On January 19, 2017, Bush was required to know the FMCSR.

164. On January 19, 2017, Bush was operating a Commercial Motor Vehicle on the roadways in the State of Alabama.

165. On January 19, 2017, Bush was required to comply with the laws of the State of Alabama governing the operation of a Commercial Motor Vehicle on Alabama's public roadways.

166. On January 19, 2017, Bush was required to comply with the laws of the State of Alabama governing the operation of a motor vehicle on Alabama's public roadways.

167. On January 19, 2017, Bush was required to comply with Truck Driver Safety Rules.

168. On January 19, 2017, Bush was required to comply with Trucking Safety Rules.

169. On January 19, 2017, Bush was negligent *per se* in that he violated the FMCSR.

170. On January 19, 2017, Bush was negligent *per se* in that he violated Alabama Commercial Motor Vehicle Laws.

171. On January 19, 2017, Bush was negligent *per se* in that he violated Alabama Motor Vehicle Laws.

172. On January 19, 2017, Bush was negligent *per se* in that he violated Truck Driver Safety

Rules.

173. On January 19, 2017, Bush was negligent *per se* in that he violated Trucking Safety Rules.

174. The aforesaid conduct of Bush was the direct and proximate cause of the Wreck.

175. As a direct and proximate consequence of the aforesaid negligent conduct of Bush causing the Wreck, Thad Still Akins was caused to suffer injuries from which he died.

176. As a direct and proximate consequence of the aforesaid negligent conduct of Bush causing the Wreck, Plaintiff was caused to incur expenses for the burial and/or interment of Thad Still Akins.

177. On January 19, 2017, Bush was driving a Truck-Tractor owned by Quality Companies and/or Quality Leasing.

178. On January 19, 2017, Bush had the permission of Quality Companies and/or Quality Leasing to use the Truck-Tractor.

179. On January 19, 2017, Bush was driving a Truck-Tractor leased to A&S.

180. On January 19, 2017, Bush was driving a Truck-Tractor on which was A&S's US DOT Number 1880751 and Motor Carrier Number MC-164166 (FMCSA Authority).

181. On January 19, 2017, Bush was an employee of A&S.

182. On January 19, 2017, Bush was an agent of A&S.

183. On January 19, 2017, Bush was driving the Truck-Tractor and Trailer under dispatch for A&S.

184. On January 19, 2017 at the time of the Wreck, Bush was transporting the Cargo for A&S.

185. On January 19, 2017 at the time of the Wreck, the Cargo was being transported under A&S's FMCSA Authority.

186. On January 19, 2017 and at the time of the Wreck, Bush was acting in the line and scope of his employment with A&S.

187. On January 19, 2017 and at the time of the Wreck, Bush was acting in the line and scope of his agency for A&S.

188. On January 19, 2017 and at the time of the Wreck, Bush was acting in accordance with the lease of the Truck Tractor by A&S.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as Administrator of the Estate of Thad Still Akins, Deceased, demand judgment against Defendants, Bush, A&S, Quality Companies, Quality Leasing and Celadon for compensatory damages in an amount to which a jury may feel they are entitled, plus interest and costs.

## COUNT TWO – WANTONNESS BUSH

189. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein and further avers as follows:

190. The conduct by Bush as described herein above was willful, reckless and wanton.

191. Based on the willful, reckless and wanton, punitive damages are due to be awarded against Bush.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as Administrator of the Estate of Thad Still Akins, Deceased, demand judgment against Defendant Bush for punitive damages in an amount to which a jury may feel they are entitled, plus interest, attorney's fees and costs.

## COUNT THREE – NEGLIGENCE A&S

192.    Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein and further avers as follows:

193.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, A&S owed to the public the duty to use ordinary care in their use of the Truck-Tractor and Trailer.

194.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, A&S was required to not needlessly endanger the public in their use of the Truck-Tractor and Trailer.

195.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, A&S failed to exercise ordinary care in their actions leading to the Wreck.

196.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, A&S needlessly endangered the public in their actions leading to the Wreck.

197.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, A&S did not meet their duties/responsibilities to the public when it:

a.  operated a motor carrier with inadequate safety management controls.

b.  failed to implement and enforce policies, programs and procedures requiring drivers to follow safety rules, practices and principles of professional truck drivers ("Truck Driver Safety Rules") with commercial driver's licenses.

c.  failed to follow safety rules, practices and principles of the trucking industry ("Trucking Safety Rules").

d.  entrusted a chattel to an incompetent driver with knowledge of said driver's incompetence.

e.  brokered the load being transported by the operator of the Commercial Motor Vehicle that was involved in the Wreck.

f.  hired and selected the operator of the Commercial Motor Vehicle that was involved in the Wreck.

g.  monitored, supervised and trained employees and agents on the hiring and selection of operators of Commercial Motor Vehicles.

h.  monitored, supervised and trained employees and agents on the dispatching operators of Commercial Motor Vehicles.

i.  failed to implement and enforce policies, programs and procedures for the hiring and selection of operators of Commercial Motor Vehicles.

j.  failed to implement and enforce policies, programs and procedures for the dispatching of operators of Commercial Motor Vehicles.

k.  trained the operator of the Commercial Motor Vehicle involved in the Wreck.

l.  supervised and monitored the operator of the Commercial Motor Vehicle involved in the Wreck.

m. dispatched the operator of the Commercial Motor Vehicle involved in the Wreck.

n.  used an unskilled, unknowledgeable, unqualified or disqualified driver.

o.  retained the employment of the operator of the Commercial Motor Vehicle involved in the Wreck.

p.  operated the Commercial Motor Vehicle involved in the Wreck.

q.  leased a Commercial Motor Vehicle.

r.  failed to inspect the Commercial Motor Vehicle involved in the Wreck in violation of the FMCSR, Alabama Law and Georgia Law.

s.  failed to implement and enforce proper Commercial Motor Vehicle inspection polices.

t.  failed to repair known mechanical problems on the Commercial Motor Vehicle involved in the Wreck in violation of the FMCSR, Alabama Law and Georgia Law.

u.  failed to engage in preventative maintenance of the Commercial Motor Vehicle involved in the Wreck in violation of the FMCSR, Alabama Law and Georgia Law.

v.  operated a Commercial Motor Vehicle in a mechanically unsafe working condition in violation of the FMCSR and Alabama Law.

w. operated a Commercial Motor Vehicle in a condition likely to cause an accident or a breakdown.

x.  operated a Commercial Motor Vehicle in violation of an Out of Service Order in violation of the FMCSR and Alabama Law.

y.  operated a Commercial Motor Vehicle without proper lights in violation of the FMCSR and Alabama Law.

z.  operated a Commercial Motor Vehicle without proper reflectors in violation of the FMCSR and Alabama Law.

aa. operated a Commercial Motor Vehicle without proper retroreflective sheeting or tape in violation of the FMCSR and Alabama Law.

bb. scheduled shipments and deliveries.

cc. violated the Federal Motor Carrier Safety Regulations.

dd. violated Alabama motor vehicle statutes.

ee. violated company policy.

ff. aided and abetted other Defendants in the violation of the Federal Motor Carrier Safety Regulations, Alabama Law, Delaware Law, Georgia Law, Indiana Law and/or New Jersey Law.

gg. caused and/or contributed to the Wreck.

hh. committed other such acts and omissions as will be shown through discovery and proven at the trial of this action.

198.  On January 19, 2017 and at the time of the Wreck, Bush was acting in the line and scope of his employment and/or agency for A&S.

199.  At all times pertinent hereto, A&S was an agent of its master, Celadon.

14

200.    The acts and omissions of A&S, as set forth herein, were within the line and scope of their agency for Celadon.

201.    At all times pertinent hereto, A&S was a mere instrument and/or the alter ego of Celadon, was controlled by Celadon so that there is no separate corporate existence, and constitute a single business enterprise carrying out a common business objective.

202.    Celadon is liable for the wrongful acts of A&S.

203.    In the alternative, A&S is being used by Celadon to evade personal responsibility.

204.    In the alternative, A&S is being used by Celadon to promote injustice.

205.    In the alternative, A&S is being used to protect Celadon from payment of just obligations.

206.    Based on the aforesaid alternatives, Celadon is liable for the wrongful acts of A&S.

207.    As a direct and proximate consequence of the aforesaid negligent conduct of A&S, Plaintiff has been injured and damaged as set out hereinabove.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as Administrator of the Estate of Thad Still Akins, Deceased, demand judgment against Defendant A&S and Celadon, for compensatory damages in an amount to which a jury may feel they are entitled, plus interest and costs.

## COUNT FOUR – WANTONNESS A&S

208.    Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein and further avers as follows:

209.    The conduct by A&S, its employees and its agents, as described herein above was willful, reckless and wanton.

210.    Based on the willful, reckless and wanton conduct, punitive damages are due to be awarded against A&S.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as Administrator of the Estate of Thad Still Akins, Deceased, demand judgment against Defendant A&S for punitive damages in an amount to which a jury may feel they are entitled, plus interest, attorney's fees and costs.

## COUNT FIVE – NEGLIGENCE QUALITY

211.    Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein and further avers as follows:

212.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Quality Companies and Quality Leasing owed to the public the duty to use ordinary care in their use of the Truck-Tractor and Trailer.

213.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Quality Companies and Quality Leasing were required to not needlessly endanger the public in their use of the Truck-Tractor and Trailer.

214.    Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Quality

Companies and Quality Leasing failed to exercise ordinary care in their actions leading to the Wreck.

215. Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Quality Companies and Quality Leasing needlessly endangered the public in their actions leading to the Wreck.

216. Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Quality Companies and Quality Leasing did not meet their duties/responsibilities to the public when they:

    a. entrusted a chattel to an incompetent driver with knowledge of said driver's incompetence.

    b. qualified an unskilled, unknowledgeable, unqualified or disqualified driver.

    c. leased a Commercial Motor Vehicle.

    d. operated the Commercial Motor Vehicle that was involved in the Wreck.

    e. operated a Commercial Motor Vehicle in a mechanically unsafe working condition in violation of the FMCSR and Alabama Law.

    f. operated a Commercial Motor Vehicle in a condition likely to cause an accident or a breakdown.

    g. operated a Commercial Motor Vehicle in violation of an Out of Service Order in violation of the FMCSR and Alabama Law.

    h. operated a Commercial Motor Vehicle without proper lights in violation of the FMCSR and Alabama Law.

    i. operated a Commercial Motor Vehicle without proper reflectors in violation of the FMCSR and Alabama Law.

    j. operated a Commercial Motor Vehicle without proper retroreflective sheeting or tape in violation of the FMCSR and Alabama Law.

    k. violated the Federal Motor Carrier Safety Regulations.

    l. violated Alabama motor vehicle statutes.

    m. violated company policy.

    n. aided and abetted other Defendants in the violation of the Federal Motor Carrier Safety Regulations, Alabama Law, Delaware Law, Georgia Law, Indiana Law and/or New Jersey Law.

    o. caused and/or contributed to the Wreck.

    p. committed other such acts and omissions as will be shown through discovery and proven at the trial of this action.

217. At all times pertinent hereto, Quality Companies and Quality Leasing were agents of their master, Celadon.

218. The acts and omissions of Quality Companies and Quality Leasing, as set forth herein, were within the line and scope of their agency for Celadon.

219. At all times pertinent hereto, Quality Companies and Quality Leasing were mere instrumentalities and/or the alter ego Celadon, were controlled by Celadon so that there is

16

no separate corporate existence, and constitute a single business enterprise carrying out a common business objective.

220. Celadon is liable for the wrongful acts of Quality Companies and Quality Leasing.

221. In the alternative, Quality Companies and/or Quality Leasing are being used by Celadon to evade personal responsibility.

222. In the alternative, Quality Companies and/or Quality Leasing are being used by Celadon to promote injustice.

223. In the alternative, Quality Companies and/or Quality Leasing are being used to protect Celadon from payment of just obligations.

224. Based on the aforesaid alternatives, Celadon is liable for the wrongful acts of Quality Companies and Quality Leasing.

225. As a direct and proximate consequence of the aforesaid negligent conduct of Quality Companies and Quality Leasing, Plaintiff has been injured and damaged as set out hereinabove.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as Administrator of the Estate of Thad Still Akins, Deceased, demand judgment against Defendant Quality Companies, Quality Leasing and Celadon for compensatory damages in an amount to which a jury may feel they are entitled, plus interest and costs.

## COUNT FIVE – WANTONNESS QUALITY

226. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein and further avers as follows:

227. The conduct by Quality Companies and Quality Leasing, its employees and its agents, as described herein above was willful, reckless and wanton.

228. Based on the willful, reckless and wanton conduct, punitive damages are due to be awarded against Quality Companies and Quality Leasing.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as Administrator of the Estate of Thad Still Akins, Deceased, demand judgment against Defendant Quality Companies and Quality Leasing for punitive damages in an amount to which a jury may feel they are entitled, plus interest, attorney's fees and costs.

## COUNT SIX– CONSPIRACY

229. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein and further avers as follows:

230. Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush, A&S, Quality Companies, Quality Leasing and Celadon engaged in concerted activities for an unlawful purpose.

231. Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush, A&S,

Quality Companies, Quality Leasing and Celadon engaged in concerted activities for a purpose not unlawful but by unlawful means.

232. Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush, A&S, Quality Companies, Quality Leasing and Celadon engaged in concerted activities for the unlawful purpose of violating the FMCSR, Alabama Law, Delaware Law, Georgia Law, Indiana Law and/or New Jersey Law.

233. Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush, A&S, Quality Companies, Quality Leasing and Celadon engaged in concerted activities by the unlawful means of violating the FMCSR, Alabama Law, Delaware Law, Georgia Law, Indiana Law and/or New Jersey Law.

234. Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush, A&S, Quality Companies, Quality Leasing and Celadon aided, abetted and assited one another in the violation of the Federal Motor Carrier Safety Regulations, Alabama Law, Delaware Law, Georgia Law, Indiana Law and/or New Jersey Law.

235. Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush, A&S, Quality Companies, Quality Leasing and Celadon engaged in overt acts in furtherance of their concerted activities, as described herein.

236. Bush's actions, set forth fully above, were overt acts in furtherance of the concerted activities between Bush, A&S, Quality Companies, Quality Leasing and Celadon.

237. A&S's actions, set forth fully above, were overt acts in furtherance of the concerted activities between Bush, A&S, Quality Companies, Quality Leasing and Celadon.

238. Quality Companies' actions, set forth fully above, were overt acts in furtherance of the concerted activities between Bush, A&S, Quality Companies, Quality Leasing and Celadon.

239. Quality Leasing's actions, set forth fully above, were overt acts in furtherance of the concerted activities between Bush, A&S, Quality Companies, Quality Leasing and Celadon.

240. Celadon's actions, set forth fully above, were overt acts in furtherance of the concerted activities between Bush, A&S, Quality Companies, Quality Leasing and Celadon.

241. The aforesaid concerted activities between Bush, A&S, Quality Companies, Quality Leasing and Celadon were the direct and proximate cause of the Wreck.

242. As a direct and proximate consequence of the aforesaid concerted activities, Plaintiff has been injured and damaged as set out hereinabove.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as Administrator of the Estate of Thad Still Akins, Deceased, demand judgment against Defendants Bush, A&S, Quality Companies, Quality Leasing and Celadon for compensatory and punitive damages in an amount to which a jury may feel they are entitled, plus interest and costs.

## **COUNT SEVEN – ACTING IN CONCERT**

243. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein and further avers as follows:

244. Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush, A&S,

Quality Companies, Quality Leasing and Celadon engaged in concerted acts and/or acted pursuant to a common design.

245.   Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush, A&S, Quality Companies, Quality Leasing and Celadon knew that other's conduct was breaching duties owed to the Public.

246.   Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush, A&S, Quality Companies, Quality Leasing and Celadon gave substantial assistance to one another in the wrongful conduct set forth herein above.

247.   The aforesaid concerted acts of Bush, A&S, Quality Companies, Quality Leasing and Celadon were the direct and proximate cause of the Wreck.

248.   As a direct and proximate consequence of the aforesaid acts, Plaintiff has been injured and damaged as set out hereinabove.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as Administrator of the Estate of Thad Still Akins, Deceased, demand judgment against Defendants Bush, A&S, Quality Companies, Quality Leasing and Celadon for compensatory and punitive damages in an amount to which a jury may feel they are entitled, plus interest and costs.

## COUNT EIGHT – JOINT VENTURE

249.   Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein and further avers as follows:

250.   Prior to and on January 19, 2017 on Interstate 65 North in Lowndes County, Bush, A&S, Quality Companies, Quality Leasing and Celadon engaged in a joint undertaking for profit in which they combine their property, money, effects, skill, and knowledge with an equal right to direct the undertaking.

251.   The aforesaid undertaking of Bush, A&S, Quality Companies, Quality Leasing and Celadon were the direct and proximate cause of the Wreck.

252.   As a direct and proximate consequence of the aforesaid undertaking, Plaintiff has been injured and damaged as set out hereinabove.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as Administrator of the Estate of Thad Still Akins, Deceased, demand judgment against Defendants Bush, A&S, Quality Companies, Quality Leasing and Celadon for compensatory and punitive damages in an amount to which a jury may feel they are entitled, plus interest and costs.

## COUNT NINE – WRONGFUL DEATH

253.   Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein and further avers as follows:

254.   This Count is brought pursuant to the Alabama Wrongful Death Act found at *Ala. Code* §6-5-410.

255.    The aforesaid conduct as set forth fully herein of Defendants Bush, A&S, Quality Companies, Quality Leasing and Celadon, combined and concurred, and as a proximate consequence thereof, Thad Still Akins was caused to suffer injuries from which he died.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as Administrator of the Estate of Thad Still Akins, Deceased, demand judgment against Defendants Bush, A&S, Quality Companies, Quality Leasing and Celadon for damages in an amount to which a jury may feel they are entitled, plus interest and costs.

RESPECTFULLY SUBMITTED,

THOMAS S. MOORE (ASB-4941-R67T)
ATTORNEY FOR THE PLAINTIFF

Attorneys for the Plaintiffs:

MOORE LAW GROUP, LLC
4984 Overton Road
Birmingham, Alabama 35210
smoore@mlgllc.net
Office: 205.314.2900
Fax: 888.701.5901

COOPER ELLENBERG (ASB-8752-R79E)
ATTORNEY FOR THE PLAINTIFF

MOORE LAW GROUP, LLC
4984 Overton Road
Birmingham, Alabama 35210
cellenberg@mlgllc.net
Office: 205.314.2900
Fax: 888.701.5901

## JURY DEMAND

Plaintiffs request a trial by struck jury.

_____
Thomas S. Moore (ASB-4941-R67T)
Cooper Ellenberg (ASB-8752-R79E)
Moore Law Group, LLC
4984 Overton Road
Birmingham, Alabama 35210
(205) 314-2900-Telephone
(888) 701-5901-Facsimile
smoore@mlgllc.net
cellenberg@mlgllc.net

## PLAINTIFF WILL SERVE DEFENDANTS BY PRIVATE PROCESS SERVER AS FOLLOWS:

**ROOSEVELT BUSH III**
4090 Waynesboro Road
Augusta, Georgia 30906.

**A&S SERVICES GROUP LLC d/b/a A&S KINARD - A CELADON COMPANY**
C/o Gerald D. Colvin
1910 1st Avenue North
Birmingham, Alabama 35203.

**QUALITY COMPANIES LLC,**
C/o Kenneth L. Core
9503 East 33rd Street
Indianapolis, Indiana 46235.

**QUALITY EQUIPMENT LEASING LLC**
C/o Kenneth L. Core
9503 East 33rd Street
Indianapolis, Indiana 46235.

**CELADON TRUCKING SERVICES INC**
C/o Kenneth L. Core
9503 East 33rd Street
Indianapolis, Indiana 46235.